FELTON <em>v.</em> WATTS, treasurer.

GILBERT, J. This case is controlled by the case of *Decatur Bank & Trust Co.* v. *Napier*, 153 *Ga.* 661 (113 S. E. 89). The provisions of the act of the General Assembly (Acts 1917, p. 295, § 3) are identical with the provisions of the act construed in that case. In that case, as well as in this, it was sought by mandamus to compel the treasurer of the county, or bank acting as treasurer in the former case, to apply funds, not from the "fine and forfeiture fund," but from the county's general funds, to the payment of insolvent costs which accrued prior to the passage of the salary act. The court did not err in refusing mandamus absolute.      *Judgment affirmed. All the Justices concur.*

No. 5078. MAY 13, 1926. REHEARING DENIED JULY 10, 1926.

Petition for mandamus. Before Judge Littlejohn. Sumter superior court. September 7, 1925.

Felton filed a petition praying that Watts, treasurer of Sumter

County, be required by writ of mandamus to apply to the payment of a judgment rendered by the superior court of said county on Dec. 15, 1916, in favor of petitioner, for $694.50 earned by petitioner as solicitor-general pro tempore on account of insolvent costs, a surplus fund accumulated from the payment of fines and forfeitures at the several terms of said court held during the years 1919 and 1920, after the payment of all items chargeable against said fund. The petitioner has, since Jan. 1, 1919, continuously filled the office of solicitor-general of the Southwestern Circuit. The respondent filed demurrers and an answer to the petition. One paragraph of the answer sets forth that the fund which petitioner seeks to subject is the portion of fines, forfeitures, and costs due to the county under the act of 1917, placing the solicitor-general upon a salary, and which but for that act would have accrued to the office of solicitor-general, but that in consequence of the act the fund belongs to the county, and petitioner has no right to the same. The court refused to grant mandamus absolute, and petitioner excepted.

*Wallis & Fort,* for plaintiff. *W. W. Dykes,* for defendant.

ON MOTION FOR REHEARING.

GILBERT, J. The plaintiff in error requests a rehearing on the following grounds: "The rehearing is prayed upon the ground that the court evidently overlooked the total evidence and exclusive evidence in the case, and took as true an unproven paragraph in answer of the defendant in error and decided the case on said answer, and not on the exclusive evidence in the case. To be more specific, the undisputed evidence shows that the treasurer of Sumter County received without dispute in excess of $1100.00 in money that should have been credited by him to fines and forfeiture fund, but which was by him, without authority of law, mixed with the general funds of the county. It was said by the court that the case was controlled by *Decatur Bank & Trust Co.* v. *Napier,* 153 *Ga.* 661, when as a matter of fact that case can have no possible application to the one at bar unless it is assumed, as the court did, that the answer of the defendant in error was true, and that the exclusive sworn evidence was not true."

It is conceded that the evidence for the solicitor-general was undisputed, as stated in the motion. The decision could not and must not be construed as an oversight by this court, nor that this

court intended in the least degree to discredit the evidence. The decision was founded on the theory that the question at issue is controlled by law, to wit, the act of the General Assembly of 1917 cited above. Necessarily, the evidence to the effect that the county treasurer should have credited the sum of money to the fines and forefeiture fund, but did credit it without authority to the general fund, was a conclusion of law. The fact that the sum of money stated was paid to the treasurer is in no manner denied or overlooked, but it can not change law. The act of the General Assembly providing that the solicitor-general of the Southwestern Circuit shall be paid a salary instead of fees is identical with the salary act as construed in *Decatur Bank & Trust Co.* v. *Napier,* supra. It was held with regard to the latter act: "The act of 1918 otherwise disposed of the fines paid in court, diverting them from the fines and forfeiture fund to the general fund." The act to be construed in this case provides in part as follows: "In the distribution among officers of court of all costs, both in particular cases or matters, and all insolvent costs, and all fines, forfeitures, and fees paid into the superior court of the counties composing said judicial circuit or which may become due and payable therein, the said counties shall be subrogated to the rights and claims of the solicitor-general of said circuit, and any former solicitor-general, and shall stand in their places and stead, and shall be entitled to all funds, moneys, and emoluments accruing to said office in said judicial circuit; and hereafter when orders on the insolvent fund or other judgment or finding are entered or approved in behalf of other officers of court, instead of the same being entered and approved in the name of the solicitor-general, as under the present system, the same shall be entered and approved in the name of the solicitor-general for use and benefit of the respective counties of said circuit. All costs, both in particular cases or matters, and all insolvent costs, and all fines, forfeitures, and fees, and all funds, moneys, and emoluments accruing to the office of solicitor-general in said judicial circuit, under any laws heretofore or now existing or which may hereafter be enacted, shall be collected by the clerks of the superior courts of the various counties composing said judicial circuit, and shall be paid by said clerks into the treasuries of their respective counties; all of which said sums shall be

the property of said counties; that is to say, all sums collected from any and all cases or matters arising in any particular county shall be paid by said clerk into the treasury of that county, and shall become the property of such county." Ga. L. 1917, p. 297, § 3.

No constitutional question is raised. The brief of plaintiff in error states that the court overruled a demurrer to the petition, but no such judgment is shown by the record. The sole assignment of error complains of the judgment refusing a mandamus absolute. A general demurrer, citing the salary act of 1917, is included in the official record, but it does not appear that the court made any ruling thereon. If this act, at least in so far as it concerns the office of solicitor-general, does not abolish or discontinue the fine and forfeiture fund as it was formerly called, we have wrongly decided the case. If such fund has been abolished, that is to say, discontinued, by now placing in the general treasury of the county funds formerly deposited therein, then we have reached the correct conclusion. Evidence can not affect the question. The act provides not only that the county is "subrogated to the rights and claims of the solicitor-general," but it also makes the same provision as to any "former solicitor-general." The petitioner in this case stands in precisely the same legal shoes as a "former solicitor-general." The act further provides, with reference to such officers, that the county shall stand in their places and in their stead, and shall be entitled to all funds and emoluments accruing to such officers. The act further provides that all costs both in particular cases and matters, all insolvent costs, and all fines and forfeitures, and all funds, moneys, and emoluments accruing to the office of solicitor-general in said judicial circuit, under all laws now existing or which may hereafter be enacted, shall be paid by said clerks into the treasuries of their respective counties; all of which said funds shall be the property of said counties. That is to say, that all sums collected from all cases or matters arising in any particular county shall be paid by said clerk into the treasury of that county, and shall become the property of said county. This language is clear, explicit, and comprehensive, and permits of no doubt as to the legislative intent; certainly not so far as the office of solicitor-general is concerned. It would have availed little in an economical

sense for the General Assembly to place these officers on a salary to be paid out of the county treasury, if, at the same time, the former law as to payment of insolvent costs had been unrepealed. The effect would have been that the counties under such law would be compelled to pay the salaries, and at the same time fines and forfeitures paid into the treasury in a large measure might have been absorbed by the insolvent orders of officers holding claims earned prior to the passage of the act. As a matter of current history, this court is aware that this question, and the possibility just mentioned, was widely discussed when the salary bills of this nature were pending before the General Assembly. But it is argued that while fines and forfeitures accruing in particular cases to the solicitor-general were subrogated to the counties, nevertheless there might be an excess sum over the amounts paid in such cases to the solicitor-general and other court officers, which excess sum should properly go to the fine and forfeiture fund. Also it may be argued that if the insolvent orders of other officers of the court, such as clerks and sheriffs, were payable out of this fund, former orders of the solicitor-general accruing out of this act were also payable out of this fund. We do not think this position is tenable, first, because the act provides that the counties shall be subrogated to orders of the solicitor-general and former solicitors-general. Also because the act further provides that hereafter when orders on the insolvent fund are approved "in behalf of *other officers* of court, instead of the same being entered and approved in the name of the solicitor-general as under the present system, the same shall be entered and approved in the name of the solicitor-general *for use and benefit of the respective counties in said circuit.*" [Italics ours.]

While this language is not so clear in all respects, it is unmistakable as to the direction that the funds shall be for the use and benefit of the respective counties. Taken all together, we adhere to the judgment already rendered—that is, that the act of 1917 as a matter of law abolished or discontinued the fines and forfeiture fund, and directed that the funds theretofore paid into the fine and forfeiture fund should be paid into the general fund of the county, and "become the property of said county."